UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERBERT WOLFF, | No. C 06-5235 SI (pr) |
| Petitioner, | **ORDER OF DISMISSAL** |
| v. | |
| A. C. NEWLAND, warden, | |
| Respondent. | |

## INTRODUCTION

Herbert Wolff, a pro se prisoner, has filed a second petition for writ of habeas corpus challenging a 1997 conviction. Now before the court for consideration is respondent's motion to dismiss the petition as untimely.

## BACKGROUND

Wolff was convicted in 1997 of continuous sexual abuse of a child under the age of fourteen and engaging in lewd and lascivious conduct with a child between the age of 14 and 15. See Cal. Penal Code § 288, 288.5. In 1997, he was sentenced to 46 years in prison.

He unsuccessfully appealed. The California Court of Appeal affirmed his conviction and the California Supreme Court denied his petition for review. The U.S. Supreme Court denied Wolff's petition for writ of certiorari on October 4, 1999.

Wolff filed his first federal petition for writ of habeas corpus on October 2, 2000, Wolff v. Newland, N. D. Cal. No. C 00-3619 SI, alleging only that the admission of evidence of uncharged sex offenses at trial under California Evidence Code § 1108 violated his right to due process. On May 29, 2002, this court denied the petition. Wolff appealed. The U.S. Court of Appeals for the Ninth Circuit affirmed the denial of the petition on May 23, 2003. Wolff v. Newland, 9th Cir. No. 06-70011. Wolff was assisted by counsel in the first federal petition.

Wolff next filed several state habeas petitions. His exhibits and the docket sheets on a state court website[1] show two overlapping rounds of state habeas petitions. The first round began with a petition in the Alameda County Superior Court that was filed on September 29, 2004, and denied on the same day. Opposition Attachment, pp. 5-6. A petition in the California Court of Appeal was filed on November 18, 2004, and denied on December 22, 2004. Id. at 7; In re. Wolff on Habeas Corpus, Cal. Ct. App. Case No. A108358, docket sheet. A petition in the California Supreme Court was filed on January 20, 2005, and denied on December 14, 2005. Wolff (Herbert D.) on H.C., Cal. S. Ct. No. S130814, docket sheet. The second round of state habeas petitions began with a petition in Alameda County Superior Court that was filed on April 29, 2005, and denied on August 19, 2005. Opposition Attachment, pp. 1-4. A petition in the California Court of Appeal was filed on September 26, 2005, and denied on September 28, 2005. Id. at 8-9.

On December 27, 2005, Wolff began efforts to file a second federal petition by mailing his Application For Leave To File Second Or Successive Petition Or Motion Under 28 U.S.C. § 2254 or § 2255 ("Application To File Second Petition") to the Ninth Circuit. On August 11, 2006, the Ninth Circuit granted the application. Wolff mailed his second petition for writ of habeas corpus ("second petition") to this court on September 6, 2006 and the petition was stamped "filed" at this court on September 9, 2006.

---

[1]The internet address is http://appellatecases.courtinfo.ca.gov.search.

**DISCUSSION**

Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which: (1) the judgment became final after the conclusion of direct review or the time has passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

The first step is to determine when the limitations period began. Wolff's conviction became final on October 4, 1999, when the U.S. Supreme Court denied his petition for review. Using the normal starting date of the date on which direct review concluded and the judgment became final, the presumptive deadline for Wolff to file his federal petition was October 4, 2000.

Wolff presents two arguments for a delayed start under § 2244(d)(2)(B), which allows the limitations period to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." First, Wolff appears to argue that he should receive a delayed start because Gibson v. Ortiz, 387 F.3d 812 (9th Cir. 2004) – the case that invalidated the jury instructions he now wants to challenge – was not decided until 2004. As respondent correctly notes, however, a court decision is not a "factual predicate" under § 2244(b)(1)(B). A court decision would be a change in the law rather than a new fact. Although it may be helpful legal authority for Wolff's new jury instruction challenge, the Gibson case was not a fact necessary to either of the claims Wolff seeks to present in the second petition. See Hasan v. Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2000) (limitations period begins "'when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance'") (citation omitted). Further, any argument that Wolff had to wait for the Gibson case to be decided to learn the factual predicate rings hollow in light of his other argument discussed below that he thought the claim

3

had been raised in his appeals filed years before Gibson was decided.

Wolff argues that he did not learn until some unidentified date after the Ninth Circuit denied his appeal that the two new claims were not included in his first federal petition. He wrote in his application to file a second petition that the "factual predicate for these claims could not have been discovered previously because although the 9th Circuit Court of Appeals denied the previous petition on May 23, 2003, Petitioner/Applicant was not informed by Appellate Counsel. [¶] Upon review of the first petition by Petitioner, it was discovered that counsel had failed to raise these two claims. Appellate counsel should have raised these issues because they were either being contested in the California Courts of Appeal at the time the original appeal issues were raised or petitioner had requested that they be included in the appeal." Petition, p. 7.1; Application For Leave To File Second Or Successive Petition Or Motion Under 28 U.S.C. § 2254 or § 2255, p. 3.10.I; see also Petition, p. 7.1.

The first problem with this argument is that it confuses the appeal in the federal habeas action with the direct appeal in state court. To the extent Wolff argues he did not discover until 2005 that the two new issues were not raised on direct appeal in state court, he has not shown due diligence. His direct appeal concluded in 1999, and Wolff has not explained why it took him six years to learn that the two issues had not been presented in it. Nor has he explained why his alleged discovery that the two new issues had not been included in the state court appeal led him to believe they should be presented to the federal court; usually, an issue must be presented to the state's highest court to exhaust it before it can be presented to the federal court in a federal habeas petition.

The next problem with Wolff's argument that he thought until some unidentified day long after May 23, 2003, that the two new issues were included in the first federal petition is that it is simply not believable. Wolff received at least four documents in 2000-2002 that clearly

indicated that the two new issues were <u>not</u> included in the first federal petition.[2] The documents mailed directly to Wolff in the first federal habeas action included (1) respondent's answer mailed to Wolff on January 17, 2001, in which respondent denied the only claim, i.e., "that petitioner's federal right to due process was denied by admission of evidence of uncharged sexual offenses," Answer, p. 2, (2) respondent's memorandum of points and authorities in support of answer mailed to Wolff on January 17, 2001, in which respondent identified the only claim in dispute as an allegation that admission of evidence of uncharged sex offenses at trial violated Wolff's right to due process, Memo. Of P&As, pp. 2, 6, (3) the order denying petition for writ of habeas corpus mailed to Wolff on May 29, 2002, in which the court identified the only issue as being the constitutionality of the admission of evidence of prior sex offenses under California Evidence Code § 1108, and (4) an order granting a certificate of appealability mailed to Wolff (and his counsel) on June 17, 2002, stating that the certificate "shall issue as to petitioner's sole claim for relief regarding Section 1108 of the California Evidence Code." Even if he did not see the original petition that counsel had filed on his behalf, Wolff did see these other documents clearly indicating that the only issue raised in the first federal habeas action was the admission of evidence issue. It simply is not believable that a prisoner would not have read at least the court's order denying his petition for writ of habeas corpus. This view springs not from pride of authorship but instead from recognition of the enormous importance of the decision to Wolff: his federal petition was his last hope for having his conviction set aside and being freed from prison. Had Wolff read the order or any of these other documents, he would

---

[2]The documents in the first action were sent directly to Wolff even though he was represented by counsel. The attorney who assisted Wolff with his first federal petition used the form habeas petition, on which Wolff was listed as the petitioner and the attorney's name was not on the first page of the petition. (That an attorney was representing him was not mentioned until page 6 of the form petition.) The proofs of service in the file for the first federal petition show that both the court and respondent's counsel sent documents directly to Wolff rather than his counsel. Wolff's counsel complained repeatedly about not receiving the documents in the action, and apparently was not added to the court's service list until June 2002, a month after the petition had been denied. (<u>See</u> Docket # 16 in <u>Wolff v. Newland</u>, No. C 00-3619 SI.) That it may have been a mistake to list Wolff rather than his counsel on the service list does not matter for present purposes, as the question here is whether Wolff knew what issues were presented in his first federal petition.

have learned that only one issue had been raised in the first petition. Even if one believed that a prisoner would not read an order denying the petition or the other documents mailed to him, the problem would be lack of diligence: a prisoner who receives documents that would alert him to a problem is not exercising due diligence if he simply ignores them. Wolff is not entitled to a delayed start of the limitations period. His one-year limitations period began on October 4, 1999 upon the conclusion of direct review.

The next step is to determine whether to apply the provision that tolls the one-year limitations period for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Wolff receives no statutory tolling because the limitations period expired long before his first state habeas petition was filed on September 29, 2004 and, by its very language, the statutory tolling provision does not apply to the pendency of the first <u>federal</u> petition.

The final step is to determine whether the limitations period should be equitably tolled. The Ninth Circuit holds that the one-year limitation period can be equitably tolled. <u>See</u> <u>Harris v. Carter</u>, No. 06-35313, slip op. 1843, 1849 n.4 (9th Cir. Feb. 8, 2008). Equitable tolling will not be available in most cases because extensions of time should be granted only if "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." <u>Id.</u> at 1849-50 (citation and internal quotation marks omitted). The petitioner bears the burden of showing that equitable tolling is appropriate. He must establish two elements in order to be granted equitable tolling: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." <u>Raspberry v. Garcia</u>, 448 F.3d 1150, 1153 (9th Cir. 2006); <u>see</u> <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 419 (2005) (petitioner's lack of diligence in filing state and federal petitions precluded equitable tolling).

Wolff is not entitled to equitable tolling based on his allegation that he believed the two new issues had been included in his first federal petition. As mentioned earlier, Wolff received documents in 2000-2002 that would have alerted any reasonably diligent petitioner to the fact

6

that the two new issues had <u>not</u> been included in the first petition yet did not seek to file a second petition until December 2005. There was no reason for him to wait for the resolution of the first federal petition to file a second federal petition, so any delay by counsel in informing him of the result of the first federal petition's appeal does not excuse any delay in bringing to this court's attention the new claims. If Wolff adopted a wait-and-see approach to see if he prevailed on his original petition before pursing additional claims, that would only make his second petition exactly the kind of piecemeal presentation of claims that the abuse of the writ rule (now codified as part of statute prohibiting second and successive petitions) is designed to prevent. Even if Wolff's attorney failed to inform him of the loss on appeal from the first federal petition until long after the Ninth Circuit issued its decision on May 23, 2003, Wolff already knew or should have known from the documents mailed to him in 2000-2002 that the two new issues had not been included in the first federal petition. He has not shown that he was pursuing his rights diligently and that some extraordinary circumstance prevented him from asserting those two new claims until December 2005.

Wolff also argues that no deference is owed as to timeliness determinations by the California courts. <u>See</u> Opposition, p. 6. This argument is irrelevant to the pending motion which argues that the petition is barred by the federal habeas statute of limitations rather than by the application of a state procedural bar. The adequacy of a rejection by the state court for untimeliness is a procedural default question that would only need to be addressed if the petition survived the current motion to dismiss.

Even if the limitations period was equitably tolled during the pendency of all the state habeas petitions and the first federal petition, the second petition would be untimely. Wolff's first federal petition was not filed until October 2, 2000, by which time 363 days of the one-year period had already passed. Sixteen more months passed between the conclusion of the appeal on the first federal petition and Wolff's return to state court to file his state habeas petitions. Three more months passed after his last state habeas petition was denied before he applied to file a second federal petition on December 27, 2005. Since Wolff had only two days left in the

limitations period when he started his collateral challenges, tolling for the pendency of all state habeas petitions plus the first federal petition would not help him because he would still miss the deadline by about nineteen months. Wolff's current petition was untimely filed and is barred by the habeas statute of limitations.

**CONCLUSION**

Respondent's motion to dismiss is GRANTED. (Docket # 10.) The current petition for writ of habeas corpus is dismissed because it was not filed before the expiration of the limitations period in 28 U.S.C. § 2244(d)(1). The clerk will close the file.

IT IS SO ORDERED.

DATED: February 21, 2008

_____
SUSAN ILLSTON
United States District Judge